**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4159

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ROBERT DALE ELLIS,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Martin K. Reidinger, Chief District Judge. (1:15-cr-00016-MR-WCM-1)

Argued: October 30, 2020                                  Decided: January 8, 2021

Before GREGORY, Chief Judge, FLOYD, and QUATTLEBAUM, Circuit Judges.

Reversed and vacated and remanded with instructions by published opinion. Chief Judge Gregory wrote the opinion, in which Judge Floyd and Judge Quattlebaum joined. Judge Quattlebaum wrote a concurring opinion.

**ARGUED:** Melissa Susanne Baldwin, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Anthony Martinez, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

GREGORY, Chief Judge:

Robert Ellis has been in and out of federal prison since 2013. Mr. Ellis initially served fifteen months in prison for failing to register as a sex offender. Afterwards, he struggled to comply with the conditions of his supervised release. As a result of his violations, Mr. Ellis served additional prison terms of ten months, nine months, and eleven months. In the intervening periods, Mr. Ellis struggled with homelessness and mental health challenges.

Mr. Ellis's underlying sex offense convictions related to the possession of child pornography. He also admitted to watching adult pornography on the internet. On that basis, the government argued for special conditions of release banning Mr. Ellis from possessing pornography or accessing the internet. The district court ultimately imposed those conditions. We find, on this record, the conditions banning legal pornography and internet access cannot be sustained as "reasonably related" under 18 U.S.C. § 3583(d)(1) and are overbroad under 18 U.S.C. § 3583(d)(2). We reverse.


I.

In 2013, Mr. Ellis pled guilty to a single federal charge of failing to register as a sex offender. Federal law required Mr. Ellis to register based on child pornography convictions under North Carolina law from 2005 and 2006. The district court sentenced Mr. Ellis to fifteen months of imprisonment and a five-year term of supervised release with the standard sex offense conditions. He was released from prison in June 2014. Before long, Mr. Ellis began to run into difficulties complying with the conditions of his release.

2

First, in March 2015, Mr. Ellis's probation officer petitioned for two months of home detention, granted by the district court, because Mr. Ellis travelled outside the district without permission. Then, before that term could be completed, the probation officer petitioned to terminate home detention because Mr. Ellis had become homeless. He was granted permission to live with a friend for several months.

In August 2015, Mr. Ellis began residing at a reentry center, which was intended to assist with housing and employment opportunities. But, according to the probation officer, upon arrival Mr. Ellis "was not willing to comply with the rules and directives of the [center] and was discharged." J.A. 40. So-called "second chance funds" were obtained to provide Mr. Ellis with emergency housing in a hotel. He moved from hotel to hotel through November, exhausting the funds available to him. At that point, Mr. Ellis was admitted to a hospital for a mental health evaluation.

Upon his release in December 2015, Mr. Ellis began residing at the reentry center again and initially participated in outpatient mental health treatment. After a few weeks, however, Mr. Ellis called a crisis hotline and stated that he was thinking of harming himself. This resulted in overnight observation at an in-patient facility. The next day, the director of the reentry center discharged Mr. Ellis because the facility "was inadequate to meet [his] mental health needs." J.A. 43. Mr. Ellis was evaluated for treatment at a mental health residential center but was not admitted beyond the day. It is unclear where Mr. Ellis resided for the next several months. The final petition to modify his release stated only that he did "not have a stable residence" and that GPS location monitoring was necessary "to ensure his whereabouts [were] known" to the probation officer. *Id.*

In August 2016, the probation officer filed a petition for revocation of supervised release, alleging ten violations. The violations were largely based on the conduct that gave rise to previous modification petitions, including Mr. Ellis's unauthorized travel and lack of cooperation with his treatment programs. Based on an agreement with the government, Mr. Ellis admitted six of the violations and the remaining four were dismissed.[1] The district court granted the petition and sentenced Mr. Ellis to ten months of imprisonment followed by a new five-year term of supervised release.

Mr. Ellis served the new prison sentence and then attempted to comply with the conditions of his release, including his mental health and sex offender treatment. But in April 2018, his probation officer again moved for revocation of supervised release, alleging three violations. Mr. Ellis reached another agreement with the government, admitting to two violations while the third charge was dismissed.[2] This time, the violations flowed from a polygraph exam during Mr. Ellis's sex offender treatment evaluation. Mr. Ellis initially lied when asked about his pornography use and then admitted to the lie after the exam. The

---

[1] The violations Mr. Ellis admitted were: unauthorized travel from the Western District of North Carolina to the Middle District; failure to report contact with a police officer after being pulled over on the highway; failure to comply with the reentry center's rules; failure to report to the probation officer as scheduled in October 2015; unauthorized travel when "soliciting for money" outside the Western District; failure to comply with mental health treatment by missing six appointments during 2016; and failure to participate in sex offender treatment after missing the intake appointment.

[2] Specifically, the admitted violations were: failure to comply with sex offender risk assessment testing by failing a polygraph exam and then admitting to lying about "daily pornography use and using devices that access the internet that are not approved"; and unauthorized computer access based on the admission from the polygraph exam.

district court granted the petition and sentenced Mr. Ellis to nine months of imprisonment and another new term of five years of supervised release.

The district court also considered several special conditions of release requested by Mr. Ellis's probation officer and argued for by the government. Two of the special conditions, relevant here, were "[t]hat he have no Internet access" and "that he shall not possess any legal or illegal pornographic material, nor shall he enter any location where such materials can be accessed, obtained, or viewed, including pictures, photographs, books, writings, drawings, videos, or video games." J.A. 77. The government argued that the pornography restriction "would be what some would call witting 'mere occasions of sin,'" and that Mr. Ellis "should not do anything where he could be put in the position to be tempted to violate the conditions of his release." J.A. 77–78. Similarly, regarding the internet ban, the government argued that "[i]t is extremely easy, even if you're just Googling or checking baseball scores, if you have a predilection for that . . . it's very easy to, then, lapse into improper things. So, again, I think that would be important to keep him from relapsing." *Id.*

Mr. Ellis's attorney, who learned of the special conditions request during the proceeding, challenged the conditions as overbroad. The pornography restriction "would prohibit him from going into libraries, bookstores, and convenience stores." J.A. 78–79. And the internet ban would create unnecessary difficulty "in accessing information as well as accessing potential job opportunities." J.A. 79. Mr. Ellis also spoke of his concerns regarding the internet ban, stating, "I have money issues right now. . . . I have to have the ability to get a way to check my e-mails" and to use a ride-share application to search for

5

employment. J.A. 82–83. The district court ultimately imposed the pornography ban, without the locational component, but not the internet ban.

Once again, Mr. Ellis served the new term of incarceration and then began serving the new term of supervised release. And, once again, his probation officer petitioned to revoke release several months later. The petition charged seven violations, including a failure to comply with GPS monitoring and required treatment programs and dishonesty with the probation officer. Mr. Ellis reached another agreement with the government, admitting five of the charges in exchange for dismissal of the remainder.[3] The district court sentenced Mr. Ellis to eleven months of imprisonment followed by yet another five-year term of supervised release.

The government requested the same special conditions banning internet and pornography access. Mr. Ellis objected to both conditions. He argued that an internet ban would make it "virtually impossible" to reenter society and that no evidence was presented by the government linking the internet or pornography to the violative conduct. J.A. 116–18. The government responded that the restrictions were appropriate "just based on the underlying charges and . . . the violations." J.A. 118.

---

[3] Specifically, the violations Mr. Ellis admitted were: failure to comply with location monitoring by allowing the battery on his GPS device to run out on several occasions; failure to provide truthful answers when discussing why the GPS device battery ran out; leaving the district without permission when Mr. Ellis travelled to South Carolina for one day; failure to comply with sex offender treatment by telling his therapist during intake that he "would never disclose historical and/or personal information"; and failure to comply with mental health treatment by declining to attend the twice-monthly sessions, instead agreeing only to attend once per month.

This time, the court overruled Mr. Ellis's objections entirely. It found the conditions were justified to compel Mr. Ellis into complying with his treatment. "If the defendant were responding to treatment . . . I would agree that those requirements . . . are not narrowly tailored," the court explained, but "[w]ithout those limitations, the probation officer is essentially left in the dark about how to redirect the defendant." J.A. 118–19. Thus, the court found that the conditions "go to the overt resistance" Mr. Ellis exhibited. *Id.* Accordingly, the court concluded that Mr. Ellis "shall [] have no Internet access" and "shall not possess any legal or illegal pornographic materials, nor shall [he] enter any location where such materials can be accessed, obtained, or viewed, including pictures, photographs, books, writings, drawings, videos, or video games." J.A. 113, 126.

Mr. Ellis filed a timely appeal, challenging the special conditions.

II.

We review the imposition of special conditions of supervised release for abuse of discretion. *United States v. Van Donk*, 961 F.3d 314, 321 (4th Cir. 2020). The district court abuses its discretion "by definition" when it makes an error of law. *Id.* (quoting *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017)).

A sentencing court must craft conditions of supervised release that comply with the requirements listed in 18 U.S.C. § 3583(d). *Id.* at 322. Section 3583(d) requires that special conditions of supervised release be: (1) "reasonably related" to the nature and circumstances of the offense, the history and characteristics of the defendant, and the statutory goals of deterrence, protection of the public, and rehabilitation; (2) "no greater

7

[a] deprivation of liberty than is reasonably necessary" to achieve those statutory goals; and (3) consistent with any relevant policy statements issued by the Sentencing Commission. *See* 18 U.S.C. § 3583(d); *United States v. McMiller*, 954 F.3d 670, 676 (4th Cir. 2020). Imposing special conditions that fail to comply with § 3583(d) is an abuse of discretion and grounds for vacating the conditions. *See, e.g.*, *United States v. Worley*, 685 F.3d 404, 407–09 & n.1 (4th Cir. 2012).

Mr. Ellis argues that the pornography and internet bans violate § 3583(d). He contends that the restrictions are insufficiently related to his conduct, history, and rehabilitation and are more restrictive than is reasonably necessary.[4] The government responds that both restrictions are sufficiently tailored and related to the offense and sentencing factors.

A.

We recently addressed the rules for restricting access to pornography during supervised release in *Van Donk*. 961 F.3d at 322–23. On the one hand, courts have "upheld bans on adult pornography where a treatment provider testified that sexually stimulating images could cause the defendant to revert to accessing child pornography." *Id.* at 322. On the other hand, courts have "struck down such conditions when they were

---

[4] In his opening brief, Mr. Ellis also argued that the term "pornography" was insufficiently defined, such that the pornography restriction should be found void for vagueness. The government responded that this Court should regard the term "pornography" as cabined by the definition used in the federal criminal code at 18 U.S.C. § 2256 to define "child pornography." In his Reply, Mr. Ellis agreed that this "narrowing construction . . . avoids constitutional vagueness concerns, so the Court need not reach the vagueness issue raised in the Opening Brief." Accordingly, Mr. Ellis waived the vagueness challenge and we do not reach the issue.

8

unaccompanied by individualized explanations for their broad sweep." *Id.* at 323; *see, e.g.*, *id.* (citing a finding that pornography bans are unsupported where "there is little indication that access to such material will impede a defendant's rehabilitation or put the community at risk") (quoting *United States v. Eaglin*, 913 F.3d 88, 99–101 (2d Cir. 2019)). We noted, for example, that this Court had recently vacated a pornography restriction "because the district court's only explanation for it was that it's 'a standard condition for sex offenders' and 'necessary and appropriate under the circumstances.'" *Id.* (quoting *United States v. Wroblewski*, 781 F. App'x 158, 162–63 (4th Cir. 2019) (per curiam)). Thus, *Van Donk* adopted a straightforward rule: "Restrictions on otherwise legal pornography are permissible under § 3583(d) where the district court adequately explains why they are appropriate, and the record supports such a finding." *Id.* at 322.

Applying that rule, *Van Donk* upheld the pornography restriction at issue. *Id.* at 323. The district court relied on testimony from a treatment provider explaining the ban's individualized connection to the defendant's treatment and recidivation risk. *Id.* Based on "her nearly thirty years of experience as a sex-offender treatment provider and her extensive dealings with [the defendant]," the treatment provider explained that "her pornography ban [was] meant to keep [the defendant] from recidivating and to treat his pornography addiction." *Id.* Therefore, the district court made a reasonable finding, supported by the evidence, that the "restriction on sexually stimulating material was necessary to treat [the defendant's] addiction and to deter him from future crimes." *Id.* And, the district court adequately "explained its finding at length in a written order and at multiple hearings." *Id.*

9

Here, by contrast, the pornography restriction was inadequately supported and explained. The district court found that the ban was justified because Mr. Ellis had resisted his treatment programs and lied about viewing legal pornography. But the district court heard no evidence about how that pornography use may or may not influence Mr. Ellis's behavior. The government put forward no individualized evidence linking pornography to Mr. Ellis's criminal conduct or rehabilitation and recidivation risk.[5] There was no testimony from a witness responsible for Mr. Ellis's treatment, as in *Van Donk*.[6] The government only presented that the pornography ban was necessary to avoid "occasions of sin," such that Mr. Ellis would not "be put in the position to be tempted to violate the conditions of his release." While this reasoning may seem intuitive or commonsense to

---

[5] To dispute this point, the government repeatedly refers to certain allegations from the petitions to revoke supervised release. These allegations appeared exclusively within charges that were dropped pursuant to Mr. Ellis's agreements with the government, or else in summaries of the probation officer's allegations in support of those charges. Mr. Ellis stated on the record that he disputed the truth of the allegations the government proffers here. Such allegations cannot be considered as evidence on appeal. *See, e.g.*, *United States v. Foley*, 946 F.3d 681, 686 (5th Cir. 2020) (holding that "a district court errs when it relies on a bare allegation of a new law violation contained in a revocation petition unless the allegation is supported by evidence adduced at the revocation hearing or contains other indicia of reliability").

[6] The government responds that Mr. Ellis "cannot seriously rely on the lack of a treatment-provider's recommendation when he has repeatedly refused to participate in treatment." This response shirks the government's own evidentiary burden on the special condition it argued for. While Mr. Ellis never consistently complied with sex offender treatment, he did frequently attend his separate mental health treatment—albeit, skipping several sessions. The government did not call that distinct treatment provider. Nor did the government call a witness at least familiar with the facts of the case and possessing expertise in sex offender treatment and recidivation. There were any number of ways the government could have put forward individualized evidence as required, and Mr. Ellis's noncompliance does not excuse that obligation.

10

some, it must be supported by individualized evidence to meet § 3583(d)'s reasonably related standard. *See id.* at 322–23. Otherwise, this explanation could justify imposing a pornography ban on every sex offender categorically, which *Van Donk* prohibits. *See id.*

The government's primary response on appeal is that the district court adequately justified the pornography restriction as an incentive for Mr. Ellis's compliance with treatment. But a court cannot impose a special condition of supervised release on that basis; rather, doing so amounts to an abuse of discretion. *See United States v. Crandon*, 173 F.3d 122, 128 (3d Cir. 1999) (explaining that conditions that restrict fundamental rights are permissible when "*directly* related to deterring [the defendant] and protecting the public")[7] (emphasis added); *cf. Van Donk*, 361 F.3d at 322 ("Treatment providers shouldn't be able to compel patients to do things wholly unrelated to the purposes of supervised release—e.g., learn to ride a unicycle—under threat of the court revoking the patient's release."). Nothing in § 3583(d), or elsewhere, authorizes a district court to use a condition of release as a "stick" to encourage desired behavior by a defendant. *See Van Donk*, 351 F.3d at 322 ("The district court's authority to impose special conditions comes from § 3583(d), so it would be wrong for the court to enforce a rule that ventures beyond the statute's requirements."). Such a rationale essentially amounts to *punishment* imposed in the hope that a change in the defendant's behavior will follow. Punishment is not an

---

[7] In unpublished cases, this Court, too, has repeatedly applied this language from *Crandon*, requiring that conditions be "directly related" to the § 3583(d) factors. *See, e.g.*, *United States v. Neeley*, 420 F. App'x 228, 231 (4th Cir. 2011) (per curiam); *United States v. Crain*, 321 F. App'x 329, 331–32 (4th Cir. 2009) (per curiam); *United States v. Wilinski*, 173 F. App'x 275, 277 (4th Cir. 2006) (per curiam); *United States v. Henson*, 22 F. App'x 107, 112 (4th Cir. 2001) (per curiam).

11

acceptable basis for release conditions. *See* 18 U.S.C. § 3583(d)(1) (omitting punishment as one of the sentencing factors upon which conditions of release may be justified).

Here, Mr. Ellis violated his release by travelling outside the judicial district without permission, skipping therapy appointments, and lying to his probation officer, among other similar violative conduct. Pornography use was not the basis of any violation. Mr. Ellis did lie about watching pornography during a polygraph exam at the outset of his sex offender treatment. But there the violative conduct was dishonesty, not pornography consumption. And the government did not otherwise establish that pornography use was, in fact, a barrier to Mr. Ellis's rehabilitation. Thus—however obvious the government believes the connection to be—the district court's restriction of that activity solely to incentivize compliance with other release conditions was as arbitrary as restricting a defendant's television-viewing or video game-playing for the same reason. *Cf. United States v. Taylor*, 796 F.3d 788, 793 (7th Cir. 2015) ("It is true that [the defendant's] crime and adult pornography have to do with sexual activity. But there is no evidence that . . . adult pornography in any way led [the defendant] to commit the crime here, or . . . would make the repeat of [his] crime . . . more likely.").

Finally, the pornography restriction impermissibly restricts more liberty than is reasonably necessary. *See* 18 U.S.C. § 3583(d)(2). As we acknowledged in *Van Donk*, pornography restrictions necessarily "encompass[] various materials that enjoy First Amendment protection." 961 F.3d at 326; *see also United States v. Shannon*, 743 F.3d 496, 500 (7th Cir. 2014) ("Adult pornography, unlike child pornography, enjoys First Amendment protection, and so we must be especially cautious when considering a ban on

12

possessing adult pornography."). But in that case, we held that the restriction of some protected materials, alone, did not render the pornography restriction at issue overbroad. *Van Donk*, 961 F.3d at 326–27.

Here, however, the restrictiveness of the condition goes beyond the extent of the materials covered. The district court also imposed a locational restriction, forbidding Mr. Ellis from "enter[ing] any location where such [pornographic] materials"—including "pictures, photographs, books, writings, drawings, videos, or video games"—could "be accessed, obtained, or viewed." Under the parties' stipulated construction of "pornography," the term covers any "visual depiction involv[ing] . . . a [person] engaging in sexually explicit conduct," which includes "actual or simulated sexual intercourse," "masturbation," or "exhibition of the anus, genitals, or pubic area." *See* 18 U.S.C. § 2256(2)(A), (8). Restricting Mr. Ellis from being physically present in any location where such materials could be accessed amounts to a dramatic restriction of liberty.

From its plain text, the restriction covers many bookstores, gas stations, museums, and art galleries. *See United States v. Gnirke*, 775 F.3d 1155, 1162 (9th Cir. 2015) ("[M]ost places selling or renting DVDs—including local libraries—will stock materials containing depictions of adult sexual acts or lascivious displays of nudity."). While the possession component restricts Mr. Ellis from viewing many movies and shows, as in *Van Donk*, the locational component restricts Mr. Ellis from even entering the movie theater. *See id.* at 1164–65 ("This part of [the defendant's] condition vastly expands its scope. . . . [The defendant] is also severely restricted in where he may shop, acquire information, and view art or entertainment."). Indeed, the prohibition could be read to cover any location that

13

allows access to a device that can browse the web, extending its reach to universities and schools, hotels and electronics stores, and presumably the homes of Ellis's friends and family. *See United States v. Adkins*, 743 F.3d 176, 194 (7th Cir. 2014) ("Read literally, this provision might preclude [the defendant] from using a computer or entering a library . . . because both are 'locations' where [pornography] is available."). Such a severe deprivation of freedom is unnecessary to prevent any purported temptation towards viewing child pornography or to otherwise further rehabilitation.

The government does not dispute that the condition has this effect. Rather, it argues the narrowing construction of the term "pornography" is a sufficient constraint and that the restriction is otherwise justified: "Although the condition would prohibit Ellis from entering a location where 'books' or 'writings' are found that contain pornographic visual depictions, the limitation to 'pornographic material' ensures that it does not extend broadly to all written literature." But the locational component ensures that this distinction makes little difference. While Mr. Ellis is not banned from *possessing* the entire literary canon, the government overlooks that he cannot enter the libraries and bookstores where such materials are available alongside, say, certain R-Rated DVDs. *See Gnirke*, 775 F.3d at 1164–65; *Adkins*, 743 F.3d at 194. Surely the district court could have tailored a restraint that more specifically targets the places where, and methods by which, "pornographic materials" can be accessed. Therefore, even by the government's understanding, the locational restriction deprives Mr. Ellis of more liberty than is reasonably necessary to prevent him from accessing the materials that are intended to be restricted.

14

Ultimately, on this record, the district court's ban on legal pornography cannot be sustained as "reasonably related" under § 3583(d)(1) and is overbroad under § 3583(d)(2). We strike the condition.

B.

The parties raise many of the same arguments regarding the condition prohibiting Mr. Ellis from accessing the internet. Mr. Ellis argues that there is no evidence linking the offense of conviction, his past crimes, or his rehabilitation to internet use. And, he contends that a total ban on internet access deprives him of more liberty than is reasonably necessary, given the vital importance of the internet to everyday life. The government provides the same arguments as those made regarding the pornography restriction; an internet ban meets § 3583(d)'s requirements because Mr. Ellis was convicted of a child pornography offense, admitted to legal pornography use, and failed to cooperate with sex offender treatment.

We first conclude that an outright ban on Mr. Ellis's internet access cannot be sustained under § 3583(d)(1)'s "reasonably related" requirement absent some evidence linking his offense or criminal history to unlawful use of the internet.[8] At least four other circuits have reached this same conclusion. *See Eaglin*, 913 F.3d at 95–99; *United States*

---

[8] We do not mean to imply that, conversely, *any* evidence of illegal internet activity always satisfies § 3583(d)(1)'s requirement. *See, e.g.*, *United States v. Wiedower*, 634 F.3d 490, 494–96 (8th Cir. 2011) (accepting the defendant's argument that an internet ban was not "reasonably related to the sentencing factors" in a case where the defendant "frequently us[ed] his computer to receive illicit images for years"); *cf. United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001) ("Although a defendant might use the telephone to commit fraud, this would not justify a condition of probation that includes an absolute bar on the use of telephones."). However, because this is a case with no evidence of online criminality at all, we have no occasion to consider what kind of showing may be sufficient.

15

*v. Ramos*, 763 F.3d 45, 61–62 (1st Cir. 2014); *United States v. Baker*, 755 F.3d 515, 525–26 (7th Cir. 2014); *United States v. Burroughs*, 613 F.3d 233, 242–43 (D.C. Cir. 2010).[9]

In this case, there is no evidence connecting the internet to any criminal conduct. Mr. Ellis's only federal offense—failing to register as a sex offender—did not involve the internet. Mr. Ellis's violations of his supervised release—travelling without permission, dishonesty with the probation officer, failing to cooperate with treatment—did not involve the internet. Therefore, there was no evidentiary basis for the district court's finding that an outright ban on Mr. Ellis's internet access was "reasonably related" under § 3583(d)(1). *See United States v. Perazza-Mercado*, 553 F.3d 65, 71 (1st Cir. 2009) ("The reluctance of many of our sister circuits to uphold a ban on internet use unless the internet was integral to the offense of conviction and/or the defendant's history of misconduct reflects an awareness that supervised release is supposed to advance the rehabilitation of the defendant."); *see also Burroughs*, 613 F.3d at 243 ("If Internet restrictions were appropriate

---

[9] These cases found an internet ban was not "reasonably related" under § 3583(d) because there was no evidence of illegal internet use. *See Eaglin*, 913 F.3d at 97 (finding, despite defendant's prior statutory-rape conviction, that a ban was not "reasonably related" because "the Internet has nothing to do with [the defendant's] offense of failing to register as a sex offender," and the defendant had never "been charged with or convicted of a sex crime involving Internet use"); *Ramos*, 763 F.3d at 62 ("[C]ases in other circuits are in general accord: where a defendant's offense did not involve the use of the internet . . ., and he did not have a history of impermissible internet . . . use, courts have vacated broad internet . . . bans[.]"); *Baker*, 755 F.3d at 525–26 (finding a ban not "reasonably related" to failure-to-register conviction and criminal history because "[n]othing about [his] use of his computer or the internet was illegal"); *Burroughs*, 613 F.3d at 243 (finding a ban not "reasonably related" to the defendant's conviction for prostituting a minor because "restrictions on computer or internet access are not *categorically* appropriate in cases where the defendant did not use them to facilitate his crime").

16

for every defendant convicted of a sex offense against a minor, we think the Sentencing Guidelines would say so.").

To rebut this conclusion, the government points to Mr. Ellis's prior child pornography convictions. But there is no evidence in the record linking the internet to the criminal conduct underlying those convictions. In 2005 and 2006, Mr. Ellis was convicted of second-degree and third-degree sexual exploitation of a minor under North Carolina law. Those offenses penalized the possession of child pornography, N.C. Gen. Stat. Ann. § 14-190.17A(a) (2006), and its duplication or distribution where the defendant did not directly facilitate the involvement of the child victim depicted, N.C. Gen. Stat. Ann. § 14-190.17(a) (2006); *State v. Fletcher*, 807 S.E.2d 528, 535 (N.C. 2017).

Presumably, those crimes often involve the internet, but could just as well be carried out on a computer without using the internet, via text message on a cell phone, or with a Xerox machine—not to mention the analog possibilities. Therefore, even though Mr. Ellis was convicted of crimes that are often carried out online, those convictions alone do not justify an internet ban under § 3583(d) absent some evidence of Mr. Ellis's own illegal internet activity. *See Burroughs*, 613 F.3d at 243 ("That an offense is sometimes committed with the help of a computer does not mean that the district court can restrict the Internet access of anyone convicted of that offense."); *United States v. Peterson*, 248 F.3d 79, 82–83 (2d Cir. 2001) (holding, where "[t]here is no indication that [the defendant's] past incest offense had any connection to computers or to the Internet," that an internet ban was "neither *reasonably* related to that conviction nor . . . to the sentencing objectives").

17

The government's remaining arguments fail for the same reasons discussed above as to the pornography restriction. Mr. Ellis did violate his supervised release by initially lying about watching pornography online on an unauthorized device. But the violative conduct was Mr. Ellis's dishonesty, not his internet use. Indeed, the conduct Mr. Ellis admitted to was not illegal. *See, e.g.*, *Ramos*, 763 F.3d at 63 (finding that the government's effort to "fill the void of justification" for an internet ban by "not[ing] that [the defendant] admitted to looking at adult pornography" still "ignore[s] the absence of evidence of [the defendant] using a computer or the internet . . . for illegal purposes"). The government did not establish that legal pornography is an obstacle to Mr. Ellis's rehabilitation or poses a risk of recidivism, let alone that banning access to the internet entirely was necessary to prevent its consumption. And incentivizing cooperation with treatment is an unacceptable basis for the restriction absent some direct relation to the § 3583(d)(1) factors. While evidence could theoretically be put forward to support an internet restriction as "reasonably related" to sex offender treatment, such evidence is not in the record in this case. *See Eaglin*, 913 F.3d at 97 ("In only highly unusual circumstances will a total Internet ban imposed as a condition of supervised release be substantively reasonable[.]").

Furthermore, the internet restriction is overbroad. The "reasonably necessary" requirement of § 3583(d)(2) "in effect require[s] the court to choose the least restrictive alternative" to achieve the statutory purposes. *See United States v. Malenya*, 736 F.3d 554, 559 (D.C. Cir. 2013) ("Section 3583(d)(2) is thus . . . a 'narrow tailoring requirement.'") (quoting *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003)). A complete ban on internet access is a particularly broad restriction that imposes a massive deprivation of

18

liberty. *Cf. Packingham v. North Carolina*, --- U.S. ---, 137 S. Ct. 1730, 1737–38 (2017) (finding a First Amendment interest in access to social media websites—only a subset of the internet's offerings—as "the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge"); *United States v. LaCoste*, 821 F.3d 1187, 1191 (9th Cir. 2016) (explaining that the internet is "vital for a wide range of routine activities in today's world," including "finding and applying for work, obtaining government services, engaging in commerce, communicating with friends and family, and gathering information on just about anything, to take but a few examples," such that "[c]utting off all access to the Internet constrains a defendant's freedom in ways that make it difficult to participate fully in society and the economy"); *see also United States v. Voelker*, 489 F.3d 139, 145 (3d Cir. 2007) ("The ubiquitous presence of the internet and the all-encompassing nature of the information it contains are too obvious to require extensive citation or discussion.").

Given the breadth of such a condition, and the vast liberty it deprives, it will rarely be the "least restrictive alternative." *See United States v. Holm*, 326 F.3d 872, 878 (7th Cir. 2003) (finding other restrictions available that "might provide a middle ground between the need to ensure that [the defendant] never again uses the Worldwide Web for illegal purposes and the need to allow him to function in the modern world"). For example—if supported by the evidence—a sentencing court could restrict a defendant from using the internet to access "chat rooms, peer-to-peer file-sharing services, and any site where [they] could interact with a child." *United States v. Holena*, 906, F.3d 288, 293 (3d

19

Cir. 2018). Similarly, if justified, a court could bar a defendant from accessing websites with pornographic content, enforcing the rule with monitoring software and computer inspections. *See, e.g.*, *Holm*, 326 F.3d at 879 (finding that the district court could "fashion precise restrictions that protect the child-victims used in Internet pornography and at the same time reflect the realities of [the defendant's] rehabilitation prospects" given that the court "already imposed . . . random searches of his computer and residence" and "a variety of filtering software is now available" that "is becoming ever more effective"); *United States v. Sofsky*, 287 F.3d 122, 126–27 (2d Cir. 2002) ("[A] more focused restriction, limited to pornography sites and images, can be enforced by unannounced . . . examinations of material stored on [the defendant's] hard drive or removable disks.").

For these reasons, the majority of circuits have held that a complete ban on internet access is overbroad even where the record contains evidence of non-contact child pornography activity, or similar conduct, on the internet. *See Holm*, 326 F.3d at 878 (collecting cases).[10] Here, the record included only the prior child pornography convictions

---

[10] *See also Holena*, 906 F.3d at 290, 295 (holding, where defendant "was convicted of using the Internet to try to entice a child into having sex," that "the ban[] fails" because of its broad sweep of legal websites); *United States v. Hinkel*, 837 F.3d 111, 115–16, 126 (1st Cir. 2016) (holding, in case based on inducement of a minor into sexual activity via the internet, that an internet ban "provides too little benefit to outweigh what we increasingly view as a serious and severe imposition"); *Wiedower*, 634 F.3d at 495 ("Here, the record shows only that [the defendant] used his computer to receive and access child pornography, which . . . is insufficient to sustain a broad computer and internet ban."); *Sofsky*, 287 F.3d at 124, 126–27 (holding, in case where the defendant "received on his home computer via the Internet more than 1,000 images of child pornography," that a total internet ban "inflicts a greater deprivation on [his] liberty than is reasonably necessary"); *United States v. White*, 244 F.3d 1199, 1201, 1206 (10th Cir. 2001) (finding, in case where defendant attempted to purchase child pornography via e-mail, that a restriction barring (Continued)

on their face, without any evidence that the underlying conduct—or any other illegal conduct by Mr. Ellis—involved the internet. Applying the above principles, it is unclear whether any internet restriction could be established as "reasonably necessary" on such a record, let alone a complete ban. Therefore, the internet ban imposed by the district court is overbroad under § 3583(d)(2). *See Malenya*, 736 F.3d at 559.

While the district court acknowledged that an internet ban would be "a great inconvenience," it nevertheless imposed the condition to induce Mr. Ellis's compliance with treatment. J.A. 119. But an internet ban implicates fundamental rights, which is more than merely inconvenient. *See, e.g.*, *Eaglin*, 913 F.3d at 96 (citing *Packingham*, 137 S. Ct. at 1737–38) ("[The defendant] has a First Amendment right to be able to email, blog, and discuss the issues of the day on the Internet while he is on supervised release."). Such a vast deprivation demands adequate justification. *See id.* Encouraging Mr. Ellis's cooperation does not authorize the district court to impose a punitive restriction.

Moreover, as a practical matter, the internet is likely to be vital to Mr. Ellis's reentry to society, including for securing housing and employment. *See id.* ("[O]ne of the conditions of supervised release is that [the defendant] remain employed: to search for a job in 2019, the Internet is nearly essential[.]"). Indeed, Mr. Ellis told the district court that he relies on internet-based apps on his smartphone to look for jobs and commute to work. In *Perazza-Mercado*, the Third Circuit found that a total ban on the defendant's internet

---

"any access whatsoever to the internet" would "overreach[]" because it would "bar [the defendant] from using a computer at a library to do any research, get a weather forecast, or read a newspaper online").

access *at home* was "inconsistent with the vocational and educational goals of supervised release" because it would "prevent[] him from engaging in the kind of educational and vocational training required for the transition from his prior employment as a teacher into a new and appropriate career." 553 F.3d at 72. The same inconsistency is present here, as to an even more sweeping restriction. *See id.* Thus, while the district court was concerned with ensuring Mr. Ellis's treatment, an internet ban may be as likely to hinder Mr. Ellis's progress as to help it.

Because the internet restriction is not "reasonably related" and "reasonably necessary" under § 3583(d), the district court erred by imposing it.

## III.

For the foregoing reasons, we conclude that the district court abused its discretion in imposing an outright ban on internet access and on possessing legal pornography or entering any location where it may be accessed. We vacate the judgment and remand for the entry of a modified judgment striking those conditions of supervised release.

*REVERSED AND VACATED AND REMANDED WITH INSTRUCTIONS*

22

QUATTLEBAUM, Circuit Judge, concurring in the judgment:

I concur in most of the majority opinion. For the reasons ably set forth by Chief Judge Gregory, I agree that the pornography and internet bans here involve a greater liberty deprivation than is reasonably necessary to deter Ellis from committing crimes, to protect the public or to effectively treat Ellis. On that basis alone, we must vacate the judgment and remand for the entry of a modified judgment striking those conditions of supervised release.

However, the majority also concludes the bans were not reasonably related to Ellis' history and treatment under 18 U.S.C. § 3583(d)(1). In my view, the record suggests otherwise. Accordingly, I would affirm the district court on this issue.

To explain, I review the procedural background. From the beginning, Ellis admitted "a serious pornography and sex addiction." J.A. 133. At his first revocation hearing, Ellis admitted to resisting compliance with his sex offender and mental health treatment. Part of that resistance stemmed from Ellis' addiction. Ellis refused to give up his smartphone for residential treatment because it was an essential means to further his addiction.[*] The government found large amounts of pornography in his possession on multiple occasions, and at one point it discovered that Ellis had been communicating with a young boy through a social media application. The district court imposed a tailored prohibition of internet-

---

[*] This resulted in a separate charge—failure to comply with residential re-entry center rules and regulations—that was ultimately dismissed after Ellis conceded to six other violations, including failure to comply with his sex offender and mental health treatment. Still, Ellis admitted to a Probation Officer that "he can't live without his phone" and that "he purposely got kicked out" of the residential treatment center because "he didn't agree with the . . . phone restrictions." J.A. 133.

23

connected devices and social media without approval from the Probation Office. But Ellis also violated these conditions, using an unauthorized device to view pornography daily and lying about it during a polygraph examination.

At his second revocation hearing, the government requested a comprehensive internet and pornography ban during Ellis' next supervised release. The district court declined to impose an internet ban, this time prohibiting Ellis from "access[ing], view[ing] or possess[ing] any legal or illegal pornographic materials." J.A. 95. Thus, after Ellis' second violation, the court broadened the restriction but did not impose an internet ban as the government requested. But once again, Ellis failed to comply with these conditions. Among his five violations justifying the third revocation of his supervised release was, yet again, failure to comply with his sex offender treatment requirements.

Thus, the district court at each revocation hearing utilized more restrictive conditions, after first rejecting the government's request to impose the restrictions we now must address. Unfortunately, over and over, Ellis violated those conditions. In the end, the district court, seeking to impose special conditions to ensure Ellis received the treatment he desperately needs, felt it had no options other than the pornography and internet bans. That does not make the bans legal. Again, I agree with the majority that they are too broad. But they were imposed only after Ellis admitted to a pornography addiction and violated a series of less onerous restrictions by, among other things, using devices to access pornography. Thus, at least in my opinion, the bans were sufficiently related to Ellis' "history and characteristics" and "the need" to provide Ellis with "correctional treatment

24

in the most effective manner." 18 U.S.C. § 3553(a)(1), (2)(D). Therefore, I would conclude they are reasonably related to the sentencing factors. *See id.* § 3583(d)(1).

Last, while I agree that *United States v. Van Donk*, 961 F.3d 314 (4th Cir. 2020) provides helpful guidance about restricting access to pornography through supervised release conditions, I am leery about placing too much emphasis on one fact in that case. As the majority notes, supportive of our affirmance was a treatment provider's testimony connecting the pornography ban to the addiction treatment and risk of repeat criminal offenses. *Id*. at 323. But *Van Donk* does not categorically require such testimony. That holding does not preclude a pornography ban without testimony from a treatment provider so long as "the record supports such a finding." *Id.* at 322. Here, the record amply supports a relationship between the ban and Ellis' history and treatment.