**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-4419

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

JOSEPH D. CASTELLANO,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Raymond A. Jackson, Senior District Judge.  (2:07−cr−00182−RAJ−JEB−1)

Argued:  December 6, 2022                    Decided:  February 17, 2023

Before DIAZ, RUSHING, and HEYTENS, Circuit Judges.

Dismissed in part; reversed in part; vacated and remanded by published opinion.  Judge Diaz wrote the opinion, in which Judge Heytens joined.  Judge Rushing wrote a dissenting opinion.

**ARGUED:**  Andrew William Grindrod, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for Appellant.  Aidan Taft Grano-Mickelsen, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.   Jessica D. Aber, United States Attorney, Richmond, Virginia, Joseph Kosky, Assistant United States Attorney, Norfolk, Virginia, Jacqueline R. Bechara, Assistant United States Attorney, OFFICE OF THE

UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

2

DIAZ, Circuit Judge:

Joseph D. Castellano pleaded guilty to transporting child pornography. The district court sentenced him to twelve years in prison and lifetime supervised release, subject to certain conditions. Castellano has struggled to comply with the conditions, returning to prison three times for violating them.

Castellano now challenges the sentence imposed after his third revocation of supervised release. He argues that the court erred in reimposing a special condition limiting his access to pornography (broadly defined), and in imposing a plainly unreasonable 24-month prison term. We reject the government's contention that Castellano failed to timely raise the first issue, and agree with him that the court erred in reimposing the condition.

We therefore reverse the district court's order rejecting Castellano's objection to the condition, vacate the judgment, and remand for resentencing.


I.

Castellano was indicted for possessing and transporting child pornography. He pleaded guilty to one count of transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1) and the district court sentenced him to 144 months in prison. The court also imposed lifetime supervised release with conditions, including Special Condition Nine: "The defendant shall not have access to or possess any pornographic material or pictures displaying nudity or any magazines using juvenile models or pictures of juveniles." J.A. 23.

3

Castellano completed his prison term and began his supervised release. But in the weeks after his release from prison, Castellano purchased and admitted to watching four on-demand pornographic movies, violating Special Condition Nine. Castellano also changed jobs without informing his probation officer and failed to update his sex-offender registration, violating two other conditions. After a hearing, the district court revoked Castellano's supervised release and sentenced him to nine more months' imprisonment and lifetime supervised release. The court noted that the "same standard and special conditions of supervised release heretofore imposed shall remain in effect" upon his release from prison. J.A. 32.

Castellano was again released from prison and, with his probation officer's help, moved into a halfway house. But soon after, his probation officer filed another petition to revoke Castellano's supervised release. The petition alleged that Castellano breached eight conditions of his supervised release by (among other things) driving without a license, failing to contact his probation officer, and having contact with his ex-fiancée's toddler son. It also stated that Castellano had violated Special Condition Nine by possessing "numerous screenshots of preteens, teens, and adult pornography," his own drawings of nude women, and nude photographs of himself. J.A. 38–39. Castellano admitted to the officer that he possessed a smartphone and used it to view pornographic websites.

The district court again revoked Castellano's supervised release, sentencing him to 20 more months' imprisonment and lifetime supervised release. The court repeated that the "same standard and special conditions previously imposed on him" would apply to his supervised release. J.A. 41.

4

Castellano was released from prison again and began supervised release. A few months later, his probation officer filed yet another petition alleging that Castellano had violated his special conditions. First, the officer said he found a smartphone on Castellano during a pat-down, violating a condition prohibiting Castellano from unauthorized use of the internet. Second, a subsequent search of the phone found five adult pornographic movies, in violation of Special Condition Nine. Third, Castellano admitted that he had unapproved contact with his girlfriend's daughter and her friend, both aged 17. At the hearing, Castellano's counsel explained that Castellano planned to go to the beach with his girlfriend, who brought along the teenagers. Counsel noted that Castellano was never alone with either teenager.[1]

The Guidelines' policy-statement range for Castellano's violations was four to ten months' imprisonment. But the government argued that Castellano's pattern of violations painted a portrait of "a defendant who just does not care and is not going to abide by the conditions" of his supervised release. J.A. 58. Noting that the court had previously imposed nine- and 20-month sentences, the government asked the court to impose the maximum 24-month sentence for the latest violations. Castellano's counsel argued that the latest violations (including merely "having a smartphone") didn't merit a 24-month sentence. J.A. 62. And he said that Castellano would lose his home and job if he was imprisoned again, undoing any progress he had made.

---

[1] The probation officer also alleged that Castellano inappropriately touched a minor coworker. In exchange for Castellano's admission of guilt on the three other violations, the government moved to dismiss this violation, and the district court granted the motion.

5

The court imposed a 24-month sentence, explaining that it had previously handed down a 20-month sentence and "[did] not believe the appropriate response is to come back now and give you far less punishment in the hope that maybe you will do what you were required to do in the first instance." J.A. 66.

After the court announced the sentence, Castellano's counsel asked the court to "modify" Special Condition Nine and some of Castellano's other supervised-release conditions.[2] J.A. 68. Castellano's counsel argued that the restriction on all pornography was vague, overbroad, and not tied to a compelling interest.

The district court rejected Castellano's objection to Special Condition Nine. The court reasoned that the condition didn't extend to "nonsexual advertisements" with teen subjects, so it wasn't facially overbroad. J.A. 91. But even a condition that did cover

---

[2] Specifically, Castellano argued that two financial-monitoring conditions—Special Conditions Two and Three—were "not related to the offense." J.A. 68. The court overruled the objection from the bench, explaining that these conditions were "necessary to facilitate the proper supervision of the defendant" by monitoring if he bought a smartphone or computer that could access the internet. J.A. 69.

However, the district court had entered an order removing Special Condition Two in 2018. *See* J.A. 28. On appeal, Castellano agrees that if we find the condition wasn't reimposed, his challenge is moot. And he stipulates that "if special condition two is gone, [he] withdraws his objection to special condition three." Appellant's Br. at 25.

The district court never reimposed Special Condition Two after removing it. And the revocation judgment specifies that Castellano will "resume the same standard and special conditions previously imposed," which doesn't include Special Condition Two. J.A. 73. Since Special Condition Two is "gone," Castellano has withdrawn his objection to Special Condition Three. We therefore dismiss Castellano's challenges to both conditions.

nonsexual advertisements would be warranted, the court found, given Castellano's "unstable addiction and continued disrespect for terms of supervised release." J.A. 92.

This appeal followed.

## II.

On appeal, Castellano argues that the court erred when it reimposed Special Condition Nine and sentenced him to 24 months in prison. We agree.

## A.

At the outset, the government urges us to reject Castellano's challenge to Special Condition Nine as untimely. Castellano should have objected to the condition when it was imposed at his original sentencing, the government argues—not at a subsequent revocation hearing. The government cites *United States v. Johnson*, 138 F.3d 115 (4th Cir. 1998), in which we held that a defendant couldn't facially challenge a supervised-release condition imposed as part of his original sentence in an appeal from a revocation order. *Id.* at 118. Instead, the defendant "should have raised his objections in a timely appeal of that initial sentence." *Id.*

Even assuming *Johnson* applies here, the government's failure to make this argument in the district court precludes our review of it. A nonjurisdictional timeliness argument can be forfeited "if the party asserting the rule waits too long to raise the point." *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004); *see also United States v. Jordan*, 952 F.3d 160, 171 n.2 (4th Cir. 2020).

7

In *Eberhart v. United States*, for example, the defendant filed an untimely "supplemental memorandum" supporting his motion for judgment of acquittal. 546 U.S. 12, 13 (2005) (per curiam). The government opposed the memorandum's arguments on the merits in the district court; it first raised the timeliness issue on appeal. *Id*. at 13–14. The Court held that "where the Government failed to raise a defense of untimeliness until after the District Court had reached the merits, it forfeited that defense," so the appellate court should have proceeded to the merits as well. *Id*. at 19.

So too here. The *Johnson* argument was available to the government when Castellano objected to the special condition in the district court. Yet the government's brief in opposition never mentioned it, instead opting to respond to Castellano's arguments on the merits. And the district court accordingly ruled on the merits.

The government suggested at oral argument it shouldn't have been expected to raise the issue in the district court because *Johnson* speaks only of appeals. But in its brief, the government urged us to adopt a broader position: that *Johnson* bars a defendant from challenging a previously imposed condition both on appeal *and* at the revocation hearing. *See, e.g.*, Appellee's Br. at 19 (arguing that "it was improper for defendant to facially attack those conditions for the first time during the third revocation proceeding."). So *Johnson*'s focus on appeals doesn't excuse the government's (untimely) timeliness argument.

We also disagree with the government's contention that any "unique interests in judicial efficiency, conservation of scarce judicial resources, and orderly and prompt administration of justice" compel us to overlook the omission. *United States v. Metzger*,

8

3 F.3d 756, 758 (4th Cir. 1993) (cleaned up). So we hold that the government forfeited any timeliness objection to Castellano's Special Condition Nine challenge.

## B.

## 1.

We have a few more procedural hurdles to clear before we reach the merits. First, Castellano offers two potential ways to view his challenge to Special Condition Nine. Castellano primarily urges us to think of the revocation hearing as a fresh slate that allows a defendant to freely challenge the conditions that will govern a future term of supervised release, even if those conditions had also been imposed for past terms. We would review those conditions for abuse of discretion, just as we would if they were imposed at the original sentencing. *United States v. Van Donk*, 961 F.3d 314, 321 (4th Cir. 2020). In the alternative, Castellano suggests we view his objection as a request to "modify" Special Condition Nine under 18 U.S.C. § 3583(e)(2).[3] In that case, Castellano would first have to point to "new, unforeseen, or changed legal or factual circumstances," because challenges that "rest[] on the factual and legal premises that existed" at the defendant's initial sentencing are "impermissible." *United States v. McLeod*, 972 F.3d 637, 644 (4th Cir. 2020). Only then could we review the condition for abuse of discretion.

We need not evaluate Castellano's "fresh slate" argument because the district court treated Castellano's objection as a request to modify the condition after it was imposed. At

---

[3] That section gives district courts authority to modify, reduce, or enlarge conditions of supervised release at any time before the expiration or termination of supervised release. 18 U.S.C. § 3583(e)(2).

the hearing, the court asked Castellano's counsel if he "want[ed] to modify some of those [conditions] he's already on?" and counsel responded "Yes." J.A. 68. The court nonetheless issued an order reimposing the same special conditions. J.A. 73. In a subsequent order, the court determined that it found "no meritorious reason to *remove*" Special Condition Nine. J.A. 92 (emphasis added). In other words, the court handed down a revocation sentence reimposing the condition—then declined to exercise its statutory authority to modify it.

We'll therefore view Castellano's objection as one to modify the terms of his upcoming supervised release under 18 U.S.C. § 3583(e). And as we'll explain, we can reach the merits even on this narrower path.

2.

Next, we examine whether Castellano's modification request for Special Condition Nine is supported by "new, unforeseen, or changed legal or factual circumstances." *McLeod*, 972 F.3d 644. Castellano suggests that two of our recent pornography-ban cases satisfy this bar: *Van Donk*, 961 F.3d 314, and *United States v. Ellis*, 984 F.3d 1092 (4th Cir. 2021). At oral argument, the government disagreed that *Van Donk* and *Ellis* had caused a "sea change" in the law around pornography bans and argued that the cases only added more "detail" to our existing jurisprudence. But we agree with Castellano.

In *Van Donk*, the district court imposed a supervised-release condition that barred the defendant from "possess[ing], view[ing] or otherwise us[ing] any type of pornography, to include adult, juvenile or child pornography, or pornography that depicts juveniles." 961 F.3d at 318. The court credited a clinical social worker's testimony that "adult

10

pornography and other sexually stimulating images could serve as a gateway to child pornography for [the defendant], and his addiction threatened to hinder his mental health and social relationships in the future." *Id.* at 323. We affirmed the sentence, holding that this testimony satisfied "the requirement that the district court make an individualized assessment as to each special condition." *Id*.

"*Van Donk* adopted a straightforward rule: 'Restrictions on otherwise legal pornography are permissible under § 3583(d) where the district court adequately explains why they are appropriate, and the record supports such a finding.'" *Ellis*, 984 F.3d at 1099 (quoting *Van Donk*, 961 F.3d at 322). The next year in *Ellis*, we applied *Van Donk* in evaluating an explanation and evidentiary showing that fell on the other side of the line.

There, the government "only presented that the pornography ban was necessary to avoid 'occasions of sin'" and failed to present testimony "from a witness responsible for Mr. Ellis's treatment." *Id.* at 1099–1100. So we found the pornography restriction flunked *Van Donk* because it was "inadequately supported and explained" on the record before the district court. *Id*. Because the restriction therefore couldn't be sustained as "reasonably related" to the relevant sentencing factors under § 3583(d)(1)—and was overbroad under § 3583(d)(2) to boot—we directed the district court to strike the condition without giving the government another chance to offer evidence. *Id.* at 1102, 1106.

Contrary to the government's assertion, we haven't required a "sea change" in the law to satisfy *McLeod*. It's true that at a high level of generality, a rule requiring explanation and record support for a special condition isn't new. But *Van Donk* and *Ellis* go a step further, fleshing out exactly what kind of explanation and evidence are required

11

in the pornography-restriction context. So *Van Donk* and *Ellis* equipped Castellano with the "changed legal circumstances" *McLeod* requires.[4]

Our conclusion is bolstered by our recent holding in *United States v. Morris*, 37 F.4th 971 (4th Cir. 2022). There, we found that *Ellis* and two other circuit precedents had sufficiently altered the law around internet-use conditions, permitting the district court to consider a modification request for such a condition. *Id.* at 977.

We explained that "*Ellis* established that non-contact sex offenses can't justify an internet ban absent a connection between the ban and the offender's conduct." *Id.* Put differently, *Ellis* made clear the government's evidentiary burden to impose an internet-access condition: It must provide "evidence connecting the internet to any criminal conduct." *Ellis*, 984 F.3d at 1102. Likewise, for pornography restrictions, *Ellis* clarified that the government must put forth "individualized evidence linking pornography to [the defendant's] criminal conduct or rehabilitation and recidivation risk." *Id.* at 1099.

In sum, we're satisfied that *Van Donk* and *Ellis* sufficiently "altered the law surrounding [pornography-restriction] conditions." *Morris*, 37 F.4th at 977. So we hold

---

[4] Our dissenting colleague suggests that since *Ellis* and *Van Donk* didn't directly change the law regarding restrictions on accessing *pictures of juveniles*, there are no "changed conditions" justifying a modification of that part of the condition. *See* Dissenting Op. at 23. But the ban on pictures of juveniles is at least substantially related to the ban on adult pornography—both have the aim of preventing a slide into viewing child pornography, and both restrict at least some First Amendment-protected materials. The district court saw fit to include both restrictions in the same condition, and *McLeod* doesn't require us to circumscribe our review.

that we (and the district court) may review Castellano's challenge to Special Condition Nine.

## C.

We turn at last to the merits of Castellano's objection to Special Condition Nine. "We review special conditions of supervision for abuse of discretion, recognizing that district courts have 'broad latitude' in this space." *Van Donk*, 961 F.3d at 321. Still, conditions of supervised release must comply with the requirements of 18 U.S.C. § 3583(d). *Id.* That is, they must (1) be "reasonably related" to the nature and circumstances of the offense, the history and characteristics of the defendant, and the statutory goals of deterrence, protection of the public, and rehabilitation; (2) involve "no greater deprivation of liberty than is reasonably necessary" to achieve those purposes; and (3) accord with any pertinent Sentencing Commission policy statements. 18 U.S.C. § 3583(d). "Imposing special conditions that fail to comply with § 3583(d) is an abuse of discretion and grounds for vacating the conditions." *Ellis*, 984 F.3d at 1098.

Castellano argues that Special Condition Nine isn't reasonably related to a legitimate goal of supervision and involves a greater deprivation of liberty than is reasonably necessary. The government responds that the ban is justified because Castellano admitted to being "addict[ed]" to pornography and his "interest in child pornography [was] intertwined with adult pornography." Appellee's Br. at 26–27.

Under *Van Donk* and *Ellis*, however, the government needed to put forth "individualized evidence linking pornography to [Castellano's] criminal conduct or rehabilitation and recidivation risk." *Ellis*, 984 F.3d at 1099. And the district court had to

13

provide an "individualized explanation[]" for the condition's "broad sweep." *Van Donk*, 961 F.3d at 323.

The district court found that Castellano "obviously has an addiction to pornographic images that he has yet to adequately address." J.A. 92. And though the court acknowledged that "possession of adult pornography is not the same as juvenile images," it concluded that Castellano's "unstable addiction and continued disrespect for terms of supervised release [] indicate that possession of any juvenile image, no matter how harmless, is a slippery slope for Defendant." *Id.* Castellano's seeming inability to comply with his supervised-release conditions, the court found, "indicates that [he] is spiraling down a path of bad habits which could potentially lead to another charge related to the underlying offense." *Id.*

While the court's reasoning "may seem intuitive or commonsense to some, it must be supported by individualized evidence to meet § 3583(d)'s reasonably related standard." *Ellis*, 984 F.3d at 1100. Such evidence is lacking here.

The government didn't offer any individualized evidence, like the "testimony from a witness responsible for [Castellano's] treatment," linking Castellano's consumption of adult pornography and his risk of viewing child pornography.[5] *Id.* at 1099. The court's

___

[5] Our dissenting colleague notes that the government cited "an article compiling academic literature about the unique effect sexually explicit material of any kind has on sex offenders and their rehabilitation efforts." Dissenting Op. at 21. But this article—published by a "KBSolutions Inc*.*," *see* J.A. 85–86—"could justify imposing a pornography ban on every sex offender categorically, which *Van Donk* prohibits." *Ellis*, 984 F.3d at 1100.

"slippery slope" inference can't bridge the gap. *See id.* at 1100 (rejecting the government's argument that an adult pornography ban was "necessary to avoid 'occasions of sin,' such that Mr. Ellis would not 'be put in the position to be tempted to violate the conditions of his release.'").[6]

The lack of evidence and explanation here is particularly troubling given Special Condition Nine's broad sweep. The condition prohibits Castellano from "hav[ing] access to . . . pictures displaying nudity"—including, evidently, his own drawings of nude figures or nude photographs of himself. J.A. 34, 38–39. It also prevents him from having access to "any magazines using juvenile models or pictures of juveniles," J.A. 34, a prohibition Castellano points out is both overinclusive (including non-sexual photographs of fully clothed individuals) and underinclusive (excluding other types of media like books or newspapers). *See* Appellant's Br. at 23.

Moreover, "hav[ing] access" could be interpreted to bar Castellano from places where these depictions may be present—including libraries, museums, gas stations, or newsstands. *See Ellis*, 984 F.3d at 1101. As in *Ellis*, we find that "[s]uch a severe deprivation of freedom is unnecessary to prevent any purported temptation towards viewing child pornography or to otherwise further rehabilitation." *Id.*

---

[6] The government cites several Fifth Circuit cases upholding similar bans where there was evidence the defendant's "interest in child pornography [was] intertwined with adult pornography." Appellee's Br. at 27–28 (citing *United States v. Abbate*, 970 F.3d 601, 606 (5th Cir. 2020) (per curiam); *United States v. Miller*, 665 F.3d 114, 136 (5th Cir. 2011)). But these cases draw inferences that *Ellis* prohibits.

The government's counterarguments are unavailing. For one, the government argues that Castellano's underlying offense had to do with his possession of nude photos, so the restriction on "pictures displaying nudity" was reasonably necessary to prevent recidivism and protect the public. Appellee's Br. at 31–33. But the defendant in *Ellis* was also convicted of possessing child pornography. 984 F.3d at 1095.

The government also argues that Castellano's repeated defiance of Special Condition Nine proves its necessity. *See* Appellant's Br. at 25–26. But a court can't impose a condition so broad that it sets the defendant up to fail, then cite that failure as a reason to keep the condition in place. Standing alone, a defendant's failure to comply with a condition says little about whether the condition "impermissibly restricts more liberty than is reasonably necessary." *Ellis*, 984 F.3d at 1101.

We hold that, on the record before the district court, Special Condition Nine isn't "reasonably related" under § 3583(d)(1) and is overbroad under § 3583(d)(2). So we conclude that the district court abused its discretion in retaining the condition. As in *Ellis*, we decline to give the government another chance to bolster the record on remand. *See id.* at 1102; *see also United States v. Fluker*, 891 F.3d 541, 552 (4th Cir. 2018) (noting that the government shouldn't "get[] a second bite at the apple to produce sufficient evidence to support a particular sentencing decision.").

We therefore reverse the order declining to modify special conditions and direct the district court to strike Special Condition Nine on remand.[7]

III.

Finally, because the district court imposed a 24-month sentence based largely on Castellano's alleged violation of Special Condition Nine, we vacate the sentence so that the court may reconsider whether Castellano's actions merited the statutory maximum sentence.

In reviewing a revocation sentence, we first determine whether the sentence was "unreasonable at all, procedurally or substantively." *United States v. Coston*, 964 F.3d 289, 296 (4th Cir. 2020) (cleaned up). A revocation sentence is procedurally reasonable if the district court considered the applicable policy-statement range and § 3553(a) factors, and substantively reasonable if it stated a "proper basis" for concluding the defendant should receive the sentence imposed (up to the statutory maximum). *See United States v. Crudup*, 461 F.3d 433, 438–40 (4th Cir. 2006).

If we conclude that the sentence is unreasonable, we then determine whether it is plainly so. *Coston*, 964 F.3d at 296. An error is plain "if the settled law of the Supreme

---

[7] Castellano also argues that the condition's ban on his access to "pictures displaying nudity" is unconstitutionally vague. Because we strike the condition on non-constitutional grounds, we need not reach Castellano's constitutional argument. *See Thompson v. Greene*, 427 F.3d 263, 267 (4th Cir. 2005).

Court or this circuit"—at the time of appellate consideration—"establishes that an error has occurred." *United States v. Cathorne*, 726 F.3d 503, 516 (4th Cir. 2013).

The district court based the revocation sentence on three special-condition violations: Castellano's possession of a smartphone, his possession of five adult pornographic movies, and his unapproved contact with two minors. The court noted its fear that Castellano's "getting a smartphone and accessing adult pornography" would soon "lapse into something else." J.A. 65. It also emphasized that Special Condition Nine, "[n]ot viewing pornography," was "all part of the same thing that brought you here, the child pornography." J.A. 66.

In other words, the district court based its sentence in large part on the violation of a condition that we now vacate as not reasonably related and overbroad. We therefore hold that the court didn't state a "proper basis" for imposing the statutory maximum, rendering the revocation sentence substantively unreasonable. *See Crudup*, 461 F.3d at 440. We also conclude that, given our holdings in *Van Donk* and *Ellis*, the error was plain.

Accordingly, we vacate the judgment and remand for resentencing.

IV.

In sum, we reverse the district court's imposition of Special Condition Nine and vacate the judgment for resentencing consistent with this opinion. We dismiss Castellano's challenges to Special Condition Two and Three.

*DISMISSED IN PART, REVERSED IN PART,*
*VACATED AND REMANDED*

RUSHING, Circuit Judge, dissenting:

I would affirm the district court's reimposition of Special Condition Nine. Even assuming that the Government could and did forfeit its timeliness objection, that we may treat Castellano's objection as a modification request, and that *United States v. Van Donk*, 961 F.3d 314 (4th Cir. 2020), and *United States v. Ellis*, 984 F.3d 1092 (4th Cir. 2021), present changed legal circumstances supporting a modification request, I disagree with the majority's conclusion that the district court abused its discretion in denying Castellano's request to modify the condition on that ground.

Our Circuit follows "a straightforward rule: 'Restrictions on otherwise legal pornography are permissible under § 3583(d) where the district court adequately explains why they are appropriate, and the record supports such a finding.'" *Ellis*, 984 F.3d at 1099 (quoting *Van Donk*, 961 F.3d at 322). Following this rule, "[w]e have upheld an adult pornography ban when," for example, "the condition was based on a pornography addiction that led . . . to viewing child pornography." *United States v. Sueiro*, --- F.4th ---, 2023 WL 1486311, at *8 n.5 (4th Cir. Feb. 3, 2023) (citing *United States v. Arce*, 49 F.4th 382, 397 (4th Cir. 2022)).

The district court here considered and relied upon just such evidence in reimposing Special Condition Nine. Castellano pled guilty in 2007 to transporting child pornography. At the time, he admitted that he had an "addiction" and "cannot stop looking at underage girls." J.A. 103. Eleven years later, while on supervised release, Castellano confirmed the same, telling his probation officer, "I have a serious addiction/problem and need help. . . . I use porn as a means to escape." J.A. 30.

19

History bears out Castellano's admitted addiction.  He has a prior state conviction for possession of child pornography.  Before he was even released from federal custody, Castellano was reprimanded for "being active on . . . teen pornography sites" and "searching for teen pornography" while residing in a halfway house.  J.A. 29.  He also admitted to "watch[ing] adult pornography almost daily" during that time.  J.A. 30.  Within one week of beginning his supervised release, Castellano was downloading and watching pornographic movies.  His release was revoked, and within two months of beginning his second term of supervised release, he admitted to his probation officer that he used a smartphone to view pornography websites and "'screenshot' numerous still pictures of both adults and teenage girls (ages 13-17) to view later." J.A. 38–39.  "[N]umerous screenshots of preteens, teens, and adult pornography" were found on his smartphone.  J.A. 39.  Castellano's release was revoked again, and less than six months after resuming supervised release, he was caught with multiple adult pornographic videos.

Not only has Castellano been unable to stop viewing pornography, he also has been unable to avoid contact with children as required by the conditions of his supervised release.  During his second term of supervised release, Castellano admitted he slept in the same bed as a 15-month-old child and had contact with six other girls and boys between the ages of 5 and 15.  During his third term of supervised release, Castellano admitted having unapproved contact with two 17-year-old girls.  And in exchange for Castellano admitting violations of three supervised release conditions at that time, the Government dismissed an allegation that he inappropriately touched a minor female co-worker.

20

In addition to this evidence, the Government presented the district court with the results of Castellano's psychosexual evaluation and sexual history polygraph, as well as an article compiling academic literature about the unique effect sexually explicit material of any kind has on sex offenders and their rehabilitation efforts. The Government cited research indicating that sex offenders respond to sexual images differently than non-offenders, leading to more deviant sexual fantasy and an increased likelihood of sexual misconduct. Linking this evidence to Castellano, the Government noted his admitted addiction to pornography, including child pornography. Because of the connection between legal and illegal pornography in Castellano's struggle to overcome his addiction, the Government argued that restricting his access to legal pornography would "help him meet his treatment goals and overcome his proclivity toward sexual deviance," reducing his risk of reoffending. J.A. 86.

The district court considered all the evidence and explained its decision not to modify Special Condition Nine. The court recounted Castellano's repeated violations of the terms of his supervised release, including contact with children and possessing pornography. Indeed, the court noted, Castellano has never complied with his supervised release terms "for any substantial period of time." J.A. 92. The court observed that Castellano "obviously has an addiction to pornographic images that he has yet to adequately address," noting in particular his admitted addiction to images of "underage girls" and his repeated violations for possessing adult pornography. J.A. 92. Ultimately, the court reasoned that Castellano's "unstable addiction and continued disrespect for terms of supervised release" indicated he was "spiraling down a path" toward reoffending. J.A.

21

92. Given "the nature and circumstances of his underlying offense" and the need "to protect the public from further crimes of the defendant," the court found "no meritorious reason to remove" Special Condition Nine. J.A. 92.

This was not an abuse of discretion. The district court adequately explained why Special Condition Nine was still appropriate, and individualized evidence supported a finding that Special Condition Nine was reasonably related to the nature and circumstances of the offense, Castellano's history and characteristics, deterrence, protection of the public, and rehabilitation, as well as no broader than reasonably necessary to achieve those purposes. *See* 18 U.S.C. § 3583(d)(1)–(2); *Ellis*, 984 F.3d at 1099. Moreover, "the reason for prohibiting [Castellano] from accessing pornography is obvious." *Arce*, 49 F.4th at 397. Like we recently held in a similar case, "[i]t was done based on his self-admitted pornography addiction," which had "escalated into viewing child pornography." *Id.*

The primary reason the majority gives for concluding to the contrary is the absence of "testimony from a witness responsible for [Castellano's] treatment." *Supra*, at 14 (quoting *Ellis*, 984 F.3d at 1099). But we have never made the testimony of a treatment provider a requirement for this type of condition. *See, e.g., Arce*, 49 F.4th at 397; *United States v. Lord*, 393 Fed. App. 60, 63 (4th Cir. 2010); *United States v. Henson*, 22 Fed. App. 107, 112 (4th Cir. 2001). Nor should we. The link between "consumption of adult pornography and [a defendant's] risk of viewing child pornography," *supra*, at 14, can be shown in a variety of ways, and we strip district courts of their duty to assess this individualized evidence when we demand cookie-cutter proof in every case.

22

The majority also concludes Special Condition Nine is overbroad and underinclusive for restricting Castellano's access to pictures of juveniles. *Supra*, at 15–16. I cannot agree. First, the district court unequivocally stated that this restriction applies only to "sexually suggestive images of minors" and excludes from its reach the "non-sexual advertisements" that Castellano's counsel hypothesized. J.A. 91. The need for this condition is "self-evident and unassailable." *Sueiro*, --- F.4th ---, 2023 WL 1486311, at *7 (internal quotation marks omitted) (describing as "obvious" the connection between defendant's child pornography crimes and a "ban on viewing juvenile models"). And if Castellano were to find himself facing revocation for seeing a nonsexual photograph or passing a newsstand, *see supra*, at 14, he could raise an as-applied challenge to the condition in a future hearing. *See Van Donk*, 961 F.3d at 325–326; *see also Sueiro*, --- F.4th ---, 2023 WL 14816311, at *8 (applying "the 'general rule that probationers may not be punished for inadvertent violations'" (quoting *Van Donk*, 961 F.3d at 324)).

Second, our ability to order modification of this portion of Special Condition Nine is doubtful. The supposed "changed legal circumstances" on which the majority relies to open the door to Castellano's modification request are *Van Donk* and *Ellis*. The majority says those decisions altered the law concerning supervised release restrictions on legal pornography. But no one contends those decisions changed the law regarding restrictions on accessing or possessing pictures of juveniles. Castellano's request to alter that portion of Special Condition Nine "rests on the factual and legal premises that existed at the time of his [initial] sentencing," foreclosing this part of his modification request. *United States v. McLeod*, 972 F.3d 637, 644 (4th Cir. 2020).

23

Finally, I disagree with the majority's decision to *sua sponte* vacate Castellano's sentence based on its determination that Special Condition Nine should be stricken. *Supra*, at 17–18. At his revocation hearing, Castellano admitted violating Special Condition Nine (as well as two other conditions) and raised no as-applied challenge to that condition with respect to this violation. In exchange, the Government dropped two other charged violations. Castellano challenged Special Condition Nine only prospectively for the supervised release term to follow his 24-month revocation sentence. Accordingly, on appeal he made no argument that we should vacate his sentence if we find the district court's most recent reimposition of Special Condition Nine unsupported. The majority, however, holds that Castellano's *admitted* violation of a condition that he *agreed* applied to him at the time was not a "proper basis" for his revocation sentence. *Supra*, at 18. That is insupportable.

I respectfully dissent.