**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 25-4012**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

JOSEPH D. CASTELLANO,

        Defendant – Appellant.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Raymond A. Jackson, Senior District Judge.  (2:07−cr−00182−RAJ−JEB−1)

---

Argued:  December 11, 2025                      Decided:  April 6, 2026

---

Before DIAZ, Chief Judge, and RUSHING and HEYTENS, Circuit Judges.

---

Affirmed by published opinion.  Chief Judge Diaz wrote the opinion, in which Judge Rushing and Judge Heytens joined.

---

**ARGUED:**  Michael Lawrence Tagliabue, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for Appellant.  Jacqueline Romy Bechara, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Andrew W. Grindrod, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for Appellant.  Erik S. Siebert, United States Attorney, Joseph Kosky, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

DIAZ, Chief Judge:

After Joseph D. Castellano pleaded guilty to transporting child sexual abuse material,[1] the district court sentenced him to 144 months in prison. It also imposed lifetime supervised release, including a special condition that barred Castellano from accessing or possessing "any pornographic material or pictures displaying nudity or any magazines using juvenile models or pictures of juveniles." *United States v. Castellano*, 60 F.4th 217, 220 (4th Cir. 2023) (*Castellano I*).

Three years ago, we reversed the district court's imposition of that special condition. Our decision turned on the government's failure to offer "any individualized evidence, like the testimony from a witness responsible for Castellano's treatment," that ensured the special condition reasonably related to the goals of his supervision. *Id.* at 225 (citation modified).

Since then, Castellano has violated his supervised release conditions several times. The district court has revoked his supervised release and returned him to prison twice. At the most recent revocation hearing, the government asked the court to impose a special condition prohibiting Castellano from accessing or possessing legal pornography. In support, the government submitted a written assessment from Castellano's treatment provider and called her to testify. The court added the special condition.

---

[1] 18 U.S.C. § 2252A(a)(1) uses the term child pornography, but "[w]e refer to such content as child sexual abuse material to reflect more accurately [its] abusive and exploitative nature." *United States v. Kuehner*, 126 F.4th 319, 322 n.1 (4th Cir. 2025) (citation modified).

Castellano appealed, contending that the special condition conflicts with our decision in *Castellano I*. We disagree and affirm.

## I.

"We review the imposition of special conditions of supervised release for abuse of discretion." *United States v. Ellis*, 984 F.3d 1092, 1098 (4th Cir. 2021). The district court "must craft conditions of supervised release" that are "'reasonably related' to the nature and circumstances of the offense, the history and characteristics of the defendant, and the statutory goals of deterrence, protection of the public, and rehabilitation." *Id.* Failure to comply with the reasonably related requirement "is an abuse of discretion and grounds for vacating the conditions." *Id.*

"We give considerable deference to a district court's determination of the appropriate supervised release conditions, recognizing that a district court has at its disposal all of the evidence, its own impressions of a defendant, and wide latitude." *United States v. Ellis*, 112 F.4th 240, 253 (4th Cir. 2024) (citation modified).

## II.

## A.

We turn now to the facts. Castellano pleaded guilty to one count of transporting child sexual abuse material, in violation of 18 U.S.C. § 2252A(a)(1), and the district court sentenced him to 144 months in prison. The court also imposed lifetime supervised release with special conditions. One special condition prohibited Castellano from accessing or

3

possessing "any pornographic material or pictures displaying nudity or any magazines using juvenile models or pictures of juveniles." *Castellano I*, 60 F.4th at 220.

Weeks after his release from prison, Castellano violated three supervised release conditions, including the legal pornography ban. The district court revoked his supervised release and imposed a nine-month sentence, followed by lifetime supervised release with the same conditions.

Shortly after Castellano served that sentence, the probation officer filed a second petition to revoke Castellano's supervised release, claiming that he had violated eight conditions, including his legal pornography ban. The district court again revoked Castellano's supervised release and sentenced him to twenty more months in prison and lifetime supervised release with the same conditions.

### B.

Castellano served his time in prison, and the probation office soon alleged that he violated his supervised release conditions for a third time. The revocation petition stated that he violated three conditions, including the ban on accessing and possessing legal pornography. The district court again revoked his supervised release and imposed a twenty-four-month sentence with the same conditions.

Castellano then sought to modify the special condition imposing the legal pornography ban, contending that the condition was vague, overbroad and didn't advance

4

the goals of supervision.  The district court declined to do so because of Castellano's "unstable addiction and continued disrespect for terms of supervised release." *Id.* at 221.

Castellano appealed.

We concluded that the district court abused its discretion in retaining the special condition.  The condition, we explained, wasn't supported by any "individualized evidence to meet [18 U.S.C.] § 3583(d)'s reasonably related standard" because "the government didn't offer any individualized evidence, like the testimony from a witness responsible for Castellano's treatment." *Id.* at 225 (citation modified).  We were especially troubled by the "lack of evidence" given the special condition's "broad sweep." *Id.* at 225–26.

So we vacated the district court's judgment and remanded for resentencing.  We instructed the court not "to give the government another chance to bolster the record on remand" and to instead strike the special condition. *Id.* at 226.

The district court complied with our instructions.  It sentenced Castellano to time served and imposed lifetime supervised release, without any special condition prohibiting legal pornography.

C.

1.

Castellano's liberty was short-lived.  After his release, the district court determined that Castellano violated a different supervised release condition prohibiting his contact with minors.  The court revoked Castellano's supervised release for the fourth time and imposed

5

a twelve-month sentence, followed by lifetime supervised release. Notably, the court didn't impose a legal pornography ban.

About three months after this latest release, Castellano signed a "Waiver of Hearing to Modify Conditions of Probation/Supervised Release" and consented to the addition of the following special condition:

> The defendant is not to use a computer, internet capable device, or similar electronic device to view or possess any 'visual depiction' of any 'sexually explicit conduct' (as both terms are defined in 18 U.S.C. § 2256), including any photograph, film, video, picture, or computer or computer-generated image or picture.

Joint Appendix (J.A.) 108.[2] This condition still permitted Castellano to view legal pornography in magazines and on DVDs.

2.

About two months later, Castellano's probation officer filed a fifth revocation petition, alleging that Castellano violated four supervised conditions, including the new special condition to which he assented by waiver. According to the violation report, Castellano used his smartphone to "view[] several images displaying sexually explicit conduct, including pornographic material." J.A. 114. Some were "morphed images with

---

[2] Castellano says that he wasn't represented by counsel when he signed the waiver. We asked the government at oral argument whether it's routine practice for the probation office to ask defendants, without the presence of counsel, to sign waivers that add conditions like those a court has rejected. The government disclaimed any such pattern or practice. We certainly hope that's true and reiterate that our orders are just as binding on the probation office as they are on the district court.

6

child-like faces and adult-like bodies," and some images "appeared to be pubescent teenagers." J.A. 114–15.

The probation officer later filed a petition addendum, alleging more violations of that new special condition. At the hearing, Castellano denied having violated it.

The government then asked the district court to impose a special condition prohibiting Castellano's access to any pornography (even legal), in whatever form. The government called Amber Hill, Castellano's "certified sex offender treatment provider" as a witness. J.A. 127. Hill had conducted a psychosexual evaluation of Castellano six years earlier, and she had been working with him since then.

Hill testified that Castellano's "use of either nude images or pornographic material are barriers to him to be able to make any progress in treatment." J.A. 129. She explained that "any nudity or pornography ignites a chain reaction of events within the offense cycle in which he will start to download, view an insatiable amount of this material, and consider[] this material for hours a day." J.A. 129. As a result, Castellano is "engaging with a device and a computer instead of spending time in relationship with others." J.A. 129. She added that when "[Castellano] began looking at pornography, [he] became more and more tolerative of the material that he was viewing and eventually was moved to more [and was] tied to looking at . . . child [sexual abuse material]." J.A. 129–30.

Hill recommended that the district court restrict Castellano from viewing any pornography. The government also introduced her written evaluation, in which she made the same recommendation.

7

On cross-examination, Hill testified that "from 2018 to [2024, she'd] seen that [Castellano's] behaviors have increased in intensity and in duration in his use of pornography." J.A. 135–36. Hill said that "[i]n 2018, he was not displaying this level of compulsion in his behaviors," but that his "sexual-hyperlized behaviors . . . [have] definitely increased now." J.A. 136.

Hill admitted that she'd never recommended that a person previously convicted of possessing, receiving, or viewing child sexual abuse material have access to legal pornography. And every time she'd been asked whether someone with a child sexual abuse material conviction should be restricted from legal pornography, she'd always supported it.

During cross-examination, the court interjected to make two points. First, the court stated:

> We are focusing on the reason [Hill] is recommending that Mr. Castellano not be permitted to [access legal] pornography. It's not because she thinks no one should do it. She explained her clinical basis over six years for suggesting that he not do it, because she's seeing that it's adversely affecting his ability to comply with what he's supposed to do in avoiding, you know, dealing with sexually explicit conduct, and you are going into getting her to make this wide perception of all kinds of people that view movies, et cetera. But the Court is focusing on the reason she's making this recommendation for Mr. Castellano. Is there any basis for it, and she stated the specific basis for Mr. Castellano.

J.A. 140. Later the court continued:

8

> We are talking about Mr. Castellano and not every other individual in America that might be convicted of child [sexual abuse material] . . . .
>
> If [Hill] simply said she [made her recommendation] because her position is no person convicted of child [sexual abuse material] should ever be able to look at [legal] pornography, the Court understands that. But she talked about her clinical basis and based on her eight years of experience dealing with Mr. Castellano for reaching her conclusion.

J.A. 141–2.

### 3.

The district court found that Castellano violated his supervised release conditions.

It imposed a ten-month sentence to be followed by lifetime supervised release.

The court also restricted Castellano from viewing or possessing legal pornography "based upon the recommendation of [his] clinical therapist [and] all the details set forth in the opinions that she's put in this record." J.A. 190. The district court told Castellano:

> The clinical therapist, Ms. Hill, testified that she believed that your continued viewing of [legal] pornography had an adverse impact on your ability to appropriately respond to treatment, because the more you saw, the more you wanted to see. It would also force you or cause you to drift from [legal] pornography into other forms of pornography, including child [sexual abuse material]. She made that particular statement clear.

J.A. 188.

After the hearing, the district court memorialized the terms of the new special condition:

> Defendant shall not view or possess any 'visual depiction' of any 'sexually explicit conduct' (as both terms are defined in 18 U.S.C. § 2256), including any photograph, film, video, picture, or computer or computer-generated image or

9

> picture, whether made or produced by electronic, mechanical, or other means.

J.A. 197.

This appeal followed.

## III.

Castellano argues that because the legal pornography "condition is not supported by individualized evidence specific to [him]," it's "not reasonably related to a permissible purpose of supervised release." Appellant's Br. at 15. And thus, he says, just as in *Castellano I*, the district court abused its discretion in imposing it.

We cannot agree.

## A.

To impose a supervised release condition restricting legal pornography, the government must "put forth individualized evidence linking [legal] pornography to [the supervisee's] criminal conduct or rehabilitation and recidivation risk." *Castellano I*, 60 F.4th at 225 (citation modified). The district court must also "provide an individualized explanation for the condition." *Id.* (citation modified).

According to Castellano, "Hill's recommendation does not pass the individualized-evidence test" because she testified that she would never recommend that "a person found

guilty of possessing, receiving, or viewing child [sexual abuse material]" have access to legal pornography. Appellant's Br. at 20. That's wrong.

To the extent that Hill engaged in any categorical reasoning, it didn't relate to Castellano's offense—transporting child sexual abuse material. During cross-examination, counsel asked Hill whether she would recommend a legal pornography ban "for someone who has been found guilty of possessing, receiving, [or] viewing[] child [sexual abuse material]," J.A. 132, or "someone who has a child [sexual abuse material] conviction." J.A. 143.

But counsel never asked whether Hill would always recommend a legal pornography ban for someone convicted of *transporting* child sexual abuse material. Because Hill didn't say anything about Castellano's only crime of conviction, under our deferential standard of review, the district court didn't err in considering her testimony.

### B.

Even if Hill had categorically recommended that any person convicted of transporting child sexual abuse material not have access to legal pornography, the district court didn't err in imposing the special condition.

In *United States v. Van Donk*, the defendant's treatment provider testified that she always "bans *all* of her new patients from accessing pornography." 961 F.3d 314, 323 (4th Cir. 2020). We still upheld the condition because the provider also "testified (and the district court found) that the ban was particularly needed in [the defendant's] case," and

11

that was enough to "satisfy[] the requirement that the district court make an individualized assessment as to each special condition." *Id.*

Hill, too, provided an individualized assessment for why a legal pornography restriction was necessary for Castellano. Based on six years of clinical observation and treatment, Hill determined that Castellano's use of pornography was a barrier to his treatment. She explained that "pornography ignites a chain reaction of events within the offense cycle in which [Castellano] will start to download [and] view an insatiable amount of this material." J.A. 129. And his condition worsened over time, so much so that he displayed "sexual-hyperlized behaviors." J.A. 135–36.

The district court relied on individualized evidence, not categorical reasoning. The court twice clarified that it was "focusing on the reason [Hill is] making this recommendation for Mr. Castellano," J.A. 140, and that "[w]e are talking about Mr. Castellano and not every other individual [who] might be convicted of child [sexual abuse material]." J.A. 141.

We're satisfied that Hill provided an individualized assessment for why the legal pornography prohibition was appropriate for Castellano's treatment. And the district court properly relied on that assessment when it imposed the special condition.[3]

---

[3] The concern we expressed in *Castellano I* about the broad and sweeping nature of the special condition isn't present here. Rather, this special condition relies on precise statutory definitions of the prohibited conduct.

12

IV.

Alternatively, Castellano contends that the mandate rule barred the district court from imposing a special condition prohibiting legal pornography. Because "the issue of a supervised release condition banning legal pornography was already litigated by the parties and decided by this Court" in *Castellano I*, Castellano maintains that "the government should not have another opportunity to try to prove up a similar condition banning legal pornography." Appellant's Br. at 33.

A.

The mandate rule "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993). Because the district court complied with our decision in *Castellano I* and because that opinion didn't bar the district court from later imposing a legal pornography ban were circumstances to change, the mandate rule isn't applicable. Even if it were, "significant new evidence" provides an exception. *Id.* at 67.

B.

In *Castellano I*, we "reverse[d] the order declining to modify special conditions and direct[ed] the district court to strike [the legal pornography condition] on remand." *Castellano*, 60 F.4th at 226. The district court complied.

Although "we decline[d] to give the government another chance to bolster the record on remand" in *Castellano I*, our decision applied to the particular facts before the district court at the time. *See id.* ("We hold that, on the record before the district court,

13

[the] [s]pecial [c]ondition . . . isn't 'reasonably related.'"). We never said that a special condition prohibiting Castellano's access to legal pornography was forever off-limits. *See Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 18 (1976) (clarifying that "the appellate mandate relates to the record and issues then before the court, and does not purport to deal with possible later events"). It wouldn't make sense to impose a perpetual limitation on the district court's authority to impose conditions of release that would support a previously incarcerated individual's recovery and reintegration. *See United States v. McLeod*, 972 F.3d 637, 643 (4th Cir. 2020).

Even if the mandate rule applied, changed circumstances provide an exception. Since *Castellano I*, Castellano voluntarily consented to a new special condition prohibiting his access to legal pornography online. The district court twice found that he violated multiple conditions of his supervised release. And the government introduced new evidence post-dating *Castellano I* to demonstrate that his condition has worsened and that access to legal pornography is undermining his treatment.

The mandate rule doesn't support Castellano's argument.

## V.

Lastly, Castellano contends that the government can't bring "belated challenges to supervised release conditions on factual or legal premises previously available" to it. Appellant's Br. at 29 (citing *McLeod*, 972 F.3d at 643–44).

*McLeod* doesn't govern. There, we concluded that a defendant's belated motion to modify supervised release conditions is permissible only when there are "new, unforeseen,

14

or changed legal or factual circumstances" that weren't present at the time of the original sentencing. *McLeod*, 972 F.3d at 644.

Castellano would have us extend this rule to the government. We decline. And we note that doing so wouldn't help Castellano because the record provides new facts post-*Castellano I* to support modification of the supervised release conditions.

\* \* \*

For these reasons, we affirm the district court's judgment.

*AFFIRMED*

15